Burke, J.
The plaintiff maintained this action to recover stipulated license fees for a period during which the defendant used equipment but did not pay fees. After trial of the action in the Municipal Court of New York City, a judgment was entered in favor of the plaintiff for $850, representing monthly license fees unpaid from September 1, 1952, to April 14, 1953, the last installment due prior to the date of trial.
Upon appeal to the Appellate Term of the Supreme Court, First Department, the judgment was reversed. The Appellate Division affirmed the determination of the Appellate Term. The Appellate Division thereafter granted leave to appeal to this court.
The sole question presented upon this appeal is: Whether the defendant may terminate its contractual obligations to pay monthly license fees to the plaintiff for the use of equipment without discontinuing the use of the equipment. An agreement dated April 14, 1937, provides:
*45 “ 5. We agree to rent the equipment described above from you and to pay to you therefor a rental of $600.00 per month for the first fifty-four months of the term hereof, and a rental of $1.00 per annum thereafter, each installment of rental to be paid in advance. In addition we agree to pay to you, as a license fee for the use of such equipment, the sum of $100.00 per month, payable in advance.
“ 7. This arrangement shall be for a period of fifty-four months from the date installation of such equipment is completed, and shall continue thereafter until terminated by us upon two months’ prior written notice to that effect. In case of any failure on our part to turn over such equipment to you upon such termination, or in case we fail to comply with any of the terms and conditions hereof, you shall have the right to enter upon the premises and repossess yourself of such equipment with or without process of law; provided however that in case we fail to comply with any of the terms or conditions hereof, you will give us written notice of such failure or alleged failure, and we shall have thirty days to comply therewith (or to commence to comply therewith if such compliance requires time for its completion) and you shall not enter upon the premises to repossess yourself of such equipment until the expiration of said thirty days, or in any case if we comply therewith (or commence so to do as above set forth and diligently carry the same to completion).”
A modification agreement dated May 14, 1940, provided: a lump sum cash payment by defendant to plaintiff of $10,260 in lieu of the then remaining balance due of $12,000 payable at the rate of $600 a month for 20 months; transfer by plaintiff to defendant of title to the Muzak equipment, and continuance of the obligation of defendant to pay plaintiff the $100 per month license fee for use of the equipment. The paragraph specifying the continuance of such license fee obligation reads: “ It is understood and agreed that the obligation of Hotel Taft Corporation to continue to pay the license fee specified in Article 5 of the agreement dated April 14, 1937 shall, irrespective of the modification made hereby, remain in full force and effect. ’ ’
Thereafter defendant paid plaintiff the sum of $10,260; plaintiff executed a bill of sale transferring to defendant the title to the Muzak equipment, and defendant continued to use the *46 equipment and pay plaintiff $100 for each month of use. Through August 31, 1952, for 147% months subsequent to the date of the 1940 modification agreement, defendant made each monthly license fee payment to plaintiff.
. On June 27, 1952, defendant advised plaintiff in writing that it was “cancelling” the contract dated April 14, 1937, and that it would cease paying license fees to plaintiff “ as of August 31, 1952 ’ ’. However, defendant concedes it did not cease to use the Muzak equipment subsequent to August 31, 1952. Nevertheless, subsequent, to August 31, 1952, defendant has not paid plaintiff the monthly license fee stipulated for use while it has continued to use the equipment.
The defendant contends that the clause of the modification agreement providing for the continuation of license fees provided for in article 5 of the original agreement was an agreement to pay such fees for the minimum period of 54 months, or until cancellation as provided for in article 7 of the original agreement.
On their face the agreements designated use as the measure of the duration of the license fee obligation. The 1937 agreement required the defendant to pay a license fee for the use of the equipment in addition to the rental payment. Upon the cancellation of the agreement the equipment was to be removed from the premises, a physical discontinuance of use. The modification agreement required the defendant to pay for the use of the equipment after title had passed to the defendant. Moreover the defendant’s course of conduct in paying the license fees for more than 12 years after the end of the contract period acknowledges its obligation to pay the license fee for the use of the equipment. The narrow construction urged by the defendant is contrary to accepted rules of construction.
The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect. (1 Restatement, Contracts, § 235, subd. [c]; Fleischman v. Furgueson, 223 N. Y. 235; Rentways, Inc., v. O'Neil Milk & Cream Co., 308 N. Y. 342, 347.) Even if there was an inconsistency between a specific provision and a general provision of a contract (we find none), the specific provision controls. (1 Restatement, Contracts, § 236, subd. [a].) Therefore the provision for the continuation of the *47 license fee for the nse of the equipment which is made a part of the modification agreement controls over the general termination provision, as the purpose of the modification agreement was to effect a transfer of the equipment for a consideration which specifically included a license fee for the continued use of the equipment. Such a construction is not only consistent with the acts of the parties to the agreements (3 Williston on Contracts, § 623; Brooklyn Public Lib. v. City of New York, 250 N. Y. 495) but is in harmony with the reasoning applied in construing a contract similar to the agreements presently under our scrutiny.
In Cammack v. Slattery & Bros. (241 N. Y. 39), a defendant contracted to manufacture radiators designed by plaintiff and in return agreed to pay plaintiff certain royalties. No duration was specified for the contract. Six years later defendant attempted to terminate the contract by serving written notice of its intention to do so; however, it continued to manufacture the radiators specified in the agreement. In that case Chief Judge Hiscock wrote (p. 45): £< If we assume, as I think is the fact, that' defendant might have terminated its contract at any time and did serve purported notices of intention so to do, the answer is that it did not as a matter of fact terminate the contract but continued to manufacture and sell radiators during the year 1921-1922. Under these circumstances this argument of defendant becomes quite academic because, of course, it would be unreasonable and inequitable to hold that the defendant might in form terminate its contract and then continue to manufacture radiators without the payment of any royalties such as it had agreed to pay.”
In April Productions v. G. Schirmer, Inc. (308 N. Y. 366), we indicated that had not the term of the underlying copyrights measured the duration of the obligation to pay for the right to publish, the obligation would have been measured by use.
Here we have no such limitation. Therefore the defendant in the case at bar cannot terminate its obligation merely by serving a formal notice. So long as it continues to exercise the right to use, it must 'fulfill its obligation to pay the' license fee.
The judgment of the Appellate Division and the determination of the Appellate Term should be reversed and the judg *48 ment of the Municipal Court reinstated, with costs to appellant in this court, the Appellate Division and the Appellate Term.
Conway, Ch. J., Desmond, Ftjld, Fboessel and Van Voobhis, JJ., concur with Btjbke, J.; Dye, J., taking no part.
Judgment accordingly.